**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BANKERS LIFE AND CASUALTY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.: 1:14-cv-3041 |
| | ) | |
| SALAH ALSHOUBAKI, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL**

Defendant Salah Alshoubaki ("Mr. Alshoubaki"), by his undersigned attorneys, respectfully submits his Response to the motion to compel filed by plaintiff Bankers Life and Casualty Company ("Bankers Life").

**INTRODUCTION**

Mr. Alshoubaki is a former employee of Bankers Life, which provides "Seniors with various insurance and financial products, such as long-term care insurance, life annuities, and Medicare Supplement insurance." (Complaint, Doc. 1, ¶1.) At the time he resigned his employment with Bankers Life on or about November 1, 2012, Mr. Alshoubaki was a Unit Supervisor in Bankers Life's Bay Area Branch. (Complaint ¶¶ 6, 32.)

In this case, Bankers Life alleges that that Mr. Alshoubaki breached various provisions of a "Unit Supervisor's Contract" that he purportedly signed in 2011 by allegedly soliciting the business of Bankers Life policyholders located in California for a competitor. Relevant to Bankers Life's Motion to Compel, the Contract provides that "During the term of this Contract and for 24 months thereafter, <u>within the territory regularly serviced by the Unit Supervisor's branch sales office</u>, the Unit Supervisor shall not, personally or through the efforts of others, attempt to induce . . . <u>[a]ny</u>

policyholder of the Company to relinquish, surrender, replace, or lapse any policy issued by the Company." (*See* Complaint, Doc. 1, ¶ 27, emphasis added.)

In its Complaint, Bankers Life identified 26 of its policyholders whom Mr. Alshoubaki purportedly attempted to induce to cancel their Bankers Life policies and purchase policies from other insurers. (Complaint ¶¶ 35-80.) Rather than tailoring its discovery to these 26 policyholders, or to information relating to Mr. Alshoubaki's alleged actions with respect to Bankers Life policyholders generally, Bankers Life has taken a shotgun approach. Indeed, as set out in its Motion, Bankers Life seeks information relating to: 1) *all* insurance companies and providers of financial products with which Mr. Alshoubaki has been "appointed, affiliated, employed or associated" since January 1, 2012, 2) *all* sales of insurance and/or financial products by Mr. Alshoubaki or *in which he was involved* for all companies other than Bankers Life since January 1, 2012, and 3) *all* tax returns and other documents showing income from *any source* for the period 2012 to the present.

As set forth below, Mr. Alshoubaki's objections to Bankers Life's vastly overbroad discovery requests are well-founded, and Bankers Life should not be allowed to conduct a fishing expedition through all of Mr. Alshoubaki's business dealings and financial information in the hope that it can find some purported wrongdoing on his part. Accordingly, for the reasons set forth below, Bankers Life's motion to compel should be denied.

## ARGUMENT

### A. Bankers Life's Motion is Moot Regarding Mr. Alshoubaki's Affiliations.

Bankers Life first argues that Mr. Alshoubaki should be compelled to provide information showing "for whom Defendant is working or with whom he is affiliated." (Motion at 3.) Documents are being produced to Bankers Life showing the companies with whom Mr. Alshoubaki

has been affiliated since 2012 and the product lines he is authorized to sell for those companies. Because Bankers Life is receiving the information it is seeking about "for whom Defendant is working or with whom he is affiliated," the Motion in this respect is moot, and should be denied.

**B. The Requests Directed to Mr. Alshoubaki's Business Activities are Overbroad.**

Bankers Life also complains that Mr. Alshoubaki has failed to provide information regarding 1) to whom he has been selling or attempting to sell insurance, and 2) what products he has been selling. (Motion at 5.) Bankers Life argues that Mr. Alshoubaki's objections to Interrogatory No. 3 and Production Request No. 4 should be overruled. (Motion at 5-7.) However, a review of the interrogatory and production request shows that they are overbroad on their face, seeking information which is wholly irrelevant to the present dispute. These requests, respectively, seek (emphasis added):

> 3. Identify and describe <u>all sales of insurance and/or financial products in which you were involved</u> since January 1, 2012 for companies other than Bankers Life. For each transaction: state the date of the transaction; the identity of the policyholder; the price paid; the product purchased; and the resulting compensation you received.
>
> 4. Any and all documents sufficient to show the particulars of <u>all sales of insurance and financial products in which you were involved</u> since January 1, 2012 for companies other than Bankers Life. This includes, but is not limited to, the date of the transaction, the identity of the policyholder, the price paid, the product purchased, and the resulting compensation you received, and the Company for which you were working at the time of the sale.

These requests seek information which is well beyond the scope of the activities Mr. Alshoubaki is purportedly prohibited from undertaking pursuant to the restrictive covenant.[1] They seek <u>all</u> documents and information relating to <u>every sale of an insurance product</u> by Mr. Alshoubaki since January 1, 2012 for any company other than Bankers Life. However, the restrictive covenant

[1] Mr. Alshoubaki has denied that he agreed to the restrictive covenant at issue, and accordingly does not admit that

at issue does not prohibit Mr. Alshoubaki from engaging in the business of selling insurance. Rather, it only prohibits him from "induc[ing] or attempt[ing] to induce" Bankers Life policyholders to "relinquish, surrender, replace or lapse" any such policy "within the territory regularly serviced by the Unit Supervisor's branch sales office." (Complaint ¶ 27.) Bankers Life's requests are not tailored to finding which, if any, Bankers Life policyholders in the relevant territory purchased insurance products from Mr. Alshoubaki. The scope of the requests is worldwide (not confined only to the territory served by the branch office in which Mr. Alshoubaki worked), covers all sales to any person (not only sales made to individuals who were Bankers Life customers), and covers every type of insurance and financial product (not just the "long-term care insurance, life annuities, and Medicare Supplement" policies which are sold by Bankers Life). The requests are therefore overbroad, and seek information (all sales of any insurance product to anyone no matter where they are located) which is plainly irrelevant to the matters at issue in this case.

Additionally, the enforceability of the restrictive covenant, as written, is not clear under Illinois law. Rather than attempting to prohibit Mr. Alshoubaki from "inducing" clients he actually serviced or had involvement with to leave Bankers Life, the covenant purports to prevent him from inducing or attempting to induce *any* Bankers Life policyholder from leaving, even policyholders Mr. Alshoubaki had no involvement with, or even knowledge of, during his employment at Bankers Life. Illinois law requires that activity restraints must be reasonably related to the employer's interest in protecting relationships with its customers that were developed during the ex-employee's tenure, and courts "are hesitant to enforce prohibitions against an employee's servicing not only customers with whom they had direct contact, but also customers they never solicited or had contact with while in plaintiff's employ." *Corroon & Black of Illinois, Inc. v. Magner*, 145 Ill.App.3d 151,

---

the covenant at issue is effective or enforceable against him.

165 (1st Dist. 1986).

By attempting to prohibit Mr. Alshoubaki from inducing any Bankers Life policyholder from leaving Bankers Life, the restrictive covenant appears to reach too far under Illinois law. Thus, only discovery relating to policyholders that Mr. Alshoubaki did business with while at Bankers Life would be relevant to this matter. Bankers Life does not reasonably limit its discovery requests to this information, but seeks carte blanche to dig through Mr. Alshoubaki's files to determine which, if any, clients he has done business with since his departure from Bankers Life happened to be Bankers Life customers, even if Mr. Alshoubaki never dealt with or heard of those clients while he was employed at Bankers Life. The discovery requests are therefore overbroad.

Bankers Life claims that it needs "information about *all* of Defendant's sales to that it can identify sales that breached Defendant's restrictive covenants, and not be forced to rely on Defendant's representations. Having a listing of all sales and revenues from each, as well as Defendant's income, would allow Plaintiff to verify that all activity has been accounted for." (Motion at 6.) This contention is without merit, and shows the overbreadth of Bankers Life's requests.

As set forth above, Bankers Life has listed in its Complaint 26 clients that were purportedly solicited by Mr. Alshoubaki after he left Bankers Life, which it was somehow able to identify prior to bringing this litigation. Presumably, a large, nationwide insurance company like Bankers Life maintains a database of its policyholders containing information regarding the Bankers Life agent involved with each policy and the geographic region in which each policy was issued. Bankers Life could have searched its database to determine the universe of potential clients who left Bankers Life and potentially placed new policies through Mr. Alshoubaki, limited to those policyholders with whom Mr. Alshoubaki dealt prior to his departure or who placed policies through Bankers Life's

Bay Area Branch, and sought information relating to that universe. Instead, it chose to seek information relating to all policies sold by Mr. Alshoubaki, whether or not they fall within the restrictions of the non-inducement covenant. Having cast its net too wide in a classic fishing expedition, Bankers Life is not entitled to the material sought in its overbroad discovery requests, and its Motion should be denied with respect to the policies sold by Mr. Alshoubaki since January 1, 2012. *See Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 185 (N.D. Ill. 2013) (denying discovery where requests were "not narrowly tailored for the discovery of relevant information"); *Jackson v. Board of Education of Rockford Public School Dist. 205*, No. 08 C 50201, 2011 WL 249476 at *3-4 (N.D. Ill.) (interrogatory seeking a list of all employees overbroad and not narrowly tailored to lead to the discovery of admissible evidence).

**C. Bankers Life's Request for All of Mr. Alshoubaki's Financial Information is Overbroad.**

Bankers Life also seeks to compel Mr. Alshoubaki to produce information relating to all income he and his wife Trisha have received, from any source whatsoever, for 2012 to the present. Bankers claims that it needs this information "in order to ascertain its damages" and to "verify that all relevant transactions are accounted for." (Motion at 8 and 9.) This discovery also goes way beyond the scope of what is relevant to the matters at issue in this case, and is entirely overbroad.

In Production Request No. 11, Bankers Life seeks "All income tax returns filed by you or any business organization with which you have any affiliation or ownership for tax year 2012, 2013 and 2014, with all attachments and schedules." (Motion at 8.) Bankers Life, however, fails to explain how income tax returns would, in any way, somehow prove relevant to any damages it incurred because of Mr. Alshoubaki's alleged conduct. Tax returns, of course, would show only the gross amounts of income Mr. Alshoubaki (or any company he owns or controls) received from

various payors in a given year. They would provide no details regarding the activities that income relates to, such as from commissions earned on policies sold to (now former) Bankers Life clients. Bankers Life does not explain how it could somehow determine its damages from these gross numbers, or how it could use them to "verify that all relevant transactions are accounted for." Nor does it make any claim that information relating to its potential damages is unavailable from some other source. *See Fierro v. Gallucci*, No. CV 06-5189, 2009 WL 606191 at * 1 (E.D.N.Y.) (in order to prevail on a motion to compel tax returns, the movant must establish 1) that the tax returns are relevant to the subject matter of the action and 2) that a "compelling need" for the returns exists because the information is not "readily available from a less intrusive source." (Citation omitted)). Mr. Alshoubaki's income tax returns clearly are not relevant to Bankers Life's claims, nor the least intrusive means from which to determine its damages, and the objections to producing those returns should be upheld.

Production Request No. 12 (and the corresponding interrogatory, No. 11) are equally overbroad. Bankers Life seeks all documents that disclose actual or deferred income from any source, and any other compensation or remuneration received by Mr. Alshoubaki or his wife since 2012. Mr. Alshoubaki's total income, and income derived from activities not related to the alleged inducement of Bankers Life policyholders to buy policies from different companies through Mr. Alshoubaki, is entirely irrelevant to any matter at issue in this case. Bankers Life has provided no justification why it should be able to scour through all of Mr. Alshoubaki's income for a three year period, or provide any hint of how this information would somehow help it to determine its damages. Bankers Life did not even attempt to propound discovery tailored to income Mr. Alshoubaki (or his wife, who is not a party to this suit) received from the sale of insurance policies, and specifically to policies sold to former Bankers Life policyholders. Because these discovery requests are patently

overbroad and seek irrelevant (not to mention highly sensitive and private) information, Mr. Alshoubaki's objections should be sustained.

Bankers Life's assertion that information relating to <u>all</u> income received by Mr. Alshoubaki is relevant simply because he and his wife operate an insurance agency targeting "the same demographic to which Bankers Life sells insurance" is a red herring. (Motion at 9.) Bankers Life ignores that nothing in the restrictive covenant prohibits Mr. Alshoubaki from operating an insurance agency or competing with Bankers Life. It only prevents Mr. Alshoubaki from inducing, directly or indirectly, Bankers Life policyholders to terminate their policies and switch to another insurance company. Mr. Alshoubaki is free to sell the very same products that Bankers Life provides to any other client, and the income he derives from such sales has no bearing on Bankers Life's damages. Bankers Life has provided no cogent reason why information relating to <u>all</u> of Mr. Alshoubaki's income is in any way relevant to its claims in this case, and its Motion should be denied.

**D. Mr. Alshoubaki Did Not Commit to Producing Any Documents.**

Lastly, Bankers Life complains that Mr. Alshoubaki has failed to produce any documents in this matter responsive to Request No. 10. In his response, Mr. Alshoubaki did not commit to producing documents, however, but stated that he would produce any responsive documents in his possession, custody or control. Mr. Alshoubaki is producing the only document currently in his possession, custody and control, and obviously cannot produce that which he does not have. To the extent any other rdocuments come into Mr. Alshoubaki's possession, custody or control which are responsive to Request No. 10, Mr. Alshoubaki will produce them pursuant to his obligation to seasonably supplement his discovery responses.

## CONCLUSION

For the reasons set forth above, the Court should deny Plaintiff's Motion to Compel in its entirety, and grant Mr. Alshoubaki such further relief as the Court deems just and appropriate.

Respectfully submitted,

**SALAH ALSHOUBAKI**

By: __/s/ David S. Makarski__________
One of Its Attorneys

Daniel E. Beederman (ARDC No. 3121545)
William R. Klein (ARDC No. 6185715)
David S. Makarski (AREC No. 6237604)
Schoenberg Finkel Newman & Rosenberg, LLC
222 South Riverside Plaza, Suite 2100
Chicago, Illinois 60606-6101
312/648-2300

## CERTIFICATE OF SERVICE

David S. Makarski, an attorney, hereby certifies that he caused a copy of the foregoing **Defendant's Response to Plaintiff's Motion to Compel** to be served on all counsel of record via the court's electronic case filing system (CM/ECF), from 222 South Riverside Plaza, Chicago, Illinois on July 23, 2015. Counsel certifies that all documents required to be served by Rule 5(a), Fed. R. Civ. P., have been served.

/s/ David S. Makarski